**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-cr-317 (TSC)** |
| | : | |
| **BENJAMIN LAROCCA** | : | **Sentencing: August 10, 2022** |
| | : | |
| | : | |
| **Defendant.** | : | |

<u>**DEFENDANT'S SENTENCING MEMORANDUM**</u>

Benjamin Larocca, through his counsel, Bret D. Lee, presents this Memorandum to the Court to aid it in deciding the appropriate sentence in this case.

Ben is to be sentenced on his plea of guilty to a charge of Disorderly and Disruptive Conduct in a Restricted Building or Grounds, 18 USC § 1752(a)(2).  The maximum penalties for this misdemeanor are one (1) year imprisonment and/or a $100,000 fine. The parties have no agreement on a recommendation for a sentence.  The guidelines in this case come out to a level 8 and a criminal history category I, which creates a guideline imprisonment range of zero months to six months.  Ben is eligible for a probationary sentence under the guidelines.  This memorandum addresses why probation without active incarceration is the appropriate disposition for this Defendant.

I.      **BACKGROUND.**

Ben is to be sentenced on his conviction for disorderly and disruptive conduct at the Capitol.  Ben accepted responsibility for his actions.  He knows he must accept the consequences for them.  It is clear that Ben broke the law and he is not trying to avoid responsibility for that.  He has shown through more than just words that he is accepting responsibility for his actions and did so quickly after January 6th, when he met with and cooperated with Federal Officers who were

investigating his involvement in the Capitol Riot.  Ben was interviewed by agents on January 20, 2021, cooperated with them, and turned over his social media and electronics to the agents as part of the investigation.  Ben is ashamed about how he acted, realizes that what he did was immature, and knows that his wrongdoing has inflicted a severe hurt on his family.  His letter to the Court show that Ben is remorseful.  The PSIR details the educational and professional opportunities Ben has pursued which shows that he can make a positive contribution to society and that there is more to this man than his conduct on January 6th.  Ben has been working hard and maintaining employment since the events that bring him before the Court.  He has honored his obligations to the Court while on pretrial release.  The principles usually applied to sentencing indicate this is not a case for harshness or active confinement.  His acceptance of responsibility and his personal history demonstrates that he can do very well on probation.

The Capitol Riot is a dark day in the history of this country.  It will likely go down in infamy as one of the closest calls this Nation ever faced regarding the peaceful transition of power in our political system.  Only time will tell how the historians will compare this event to other political crises in our history where peaceful transition of power was threatened, such as the Election of 1800, the Civil War and Election of 1864, or other periods of unrest in the political life of the United States.  The reason that January 6 can be grouped with the close calls, however, is because the rule of law prevailed.  The 2020 election was certified.  Public servants did their duty. The Vice President and Congress returned to sessions to certify the election in rooms that had earlier been occupied by rioters.  Executive power was later transferred to President Biden from President Trump.  The system was strained, but worked.  There is a massive debt owed to law enforcement, who made sure that they stood between those who wanted to do harm and their targets, especially at great personal risk to themselves.  All of this was to ensure, paraphrasing

John Adams, that a government of laws, not of men, would continue.

The rule of law prevailed on January 6th. It is essential that, in dealing with the reckoning which must occur afterwards, that we continue to follow the rule of law. Many call for the sentences of those who participated in the Capitol Riot to be uniformly harsh and unforgiving. The Government and this Court, however, have resisted the calls for one size fits all consequences. That is the adherence to the rule of law that we need and expect from the justice system. When following the principles that apply to sentencings, and in placing Ben and his actions in context, they support sentencing him to probation. The gravity of what happened is not lost on Ben. He should never have participated the events of January 6th. He was not acting violently, but certainly did not need to be where he was, within the hallways of the Capitol. Ben understands that his presence there, even if non-violent, was improper and had the potential to divert needed resources from law enforcement. However, he was a far cry from the worst actors on that day. He has shown remorse. And he took responsibility for his acts in many significant ways following January 6th.

On January 6th, Ben posted to social media extensively. He was inside the Senate side of the Capitol for under fifteen minutes, from approximately 2:53 p.m. until he left, not to return, at approximately 3:06 p.m. During those fifteen minutes, Ben was with a crowd around the Brumidi corridors, the hallway which was near the Senate Pro Tempore's Office. No one near him at that time was acting violently, or causing property damage. The crowd was unruly, and engaged in chants of "USA!" and "Whose house? Our house!," while other individuals chanted, "Forward!" Ben, using his cell phone, filmed these events and himself in "selfie mode" chanting "Our house!" and posted it to his Instagram story. Ben added a caption to one of the videos that read, "We got in." After exiting the building, he milled around some, and later saw his friend and co-defendant, Christian Cortez, scream at and engage with law enforcement officers who were trying to secure

the building.  Ben saw Christian get pepper sprayed.  Ben was not sprayed himself, but later was joking with friends on social media that he had been sprayed.  His reaction was immature.  Over the next few days, Ben continued to exchange a few messages with people on social media.  He did not call for violence or attempt to justify his actions.  He was instead joking with a few acquaintances about the events.  He was downplaying it because he did not understand the significance of what had happened.  Ben soon came to realize the seriousness and error of his actions.

After his return to Texas, Ben met with FBI agents there who were investigating the Capitol Riot.  He cooperated, spoke with them without counsel, provided his social media information, and gave over electronic devices that they requested.  When he was charged, he surrendered to the Court, was given pretrial release, retained counsel to assist him, and has complied with all pretrial conditions that this Court and the Courts in Texas have set.  As his letter shows, as he learned more about what happened at the Capitol during the January 6th Riot, and as he reflected on it, he has come to a full understanding that what he did was wrong.  His remorse and regret are sincere, and consistent with the way he conducted himself with law enforcement and the courts following January 6th.

## II.     PRINCIPLES APPLICABLE TO SENTENCING.

The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the Defendant.  A punishment ought not be excessive and must serve the goals of sentencing, which are just punishment, deterrence, incapacitation, and rehabilitation,

which is recognized in the mission statement behind the Sentencing Commission[1], and all Federal

sentencings governed by 18 U.S.C. §3553(a).  Ben does not require the harshness of an active jail

sentence, because a probationary sentence will achieve the goals set forth in 18 U.S.C. §3553(a).

The arguments which are often urged to justify prison confinement are not applicable in

this particular case.  Those reasons generally urged for such sentences are punishment, protection

of society, and deterrence from future crime.  Sentencing for punitive purposes does not serve a

utilitarian purpose and is, in fact, counterproductive to a free and democratic society.  We are not

a society ruled by the emotion of revenge and should resist those who seek to pull us in that

direction.  We already have too many non-violent offenders who are incarcerated in America.   It

presents an enormous strain on the justice system and the taxpayers to incarcerate those who truly

need rehabilitation and can still contribute to society.  These considerations are even more acute

today with the increased strain on state and local government from the COVID-19 pandemic and

the importance of not overloading the jails and prisons during the current public health crisis.

Specific deterrence and the protection of society is not implicated in this case.  Ben did not

hurt anyone or attempt to employ violence.  He did not personally destroy any property.  He has

no history of violence of any kind.  There is no need to incapacitate him to avoid a risk of danger

to the public since he presents no risk of danger.  The concept of deterrence holds that an individual

punished for a crime will not likely repeat it.   Punishment, however, does not always have to be

incarceration.  Incarceration is one of the most severe sanctions available in our free society.  Ben

will not think he has gotten off lightly if he is given probation instead of incarceration.  He knows

that he will always carry his conviction on his record, and it will be a source of pain and

---

[1] See United States Sentencing Commission, Executive Summary, at iv,
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-
surveys/miscellaneous/15-year-study/executive_summary_and_preface.pdf

embarrassment for him for the rest of his life. Nevertheless, he wanted to take responsibility and accept the consequences. Ben has a strong supportive network, which many do not have available, which shows that he is poised for success on probation. Ben knows that if he is given an opportunity to remain in society he will have to perform perfectly on probation. He is dedicated to not letting down his family or the Court if given a sentence that places faith in him to follow the rules and keep the peace.

In any case involving January 6th, the Court must consider general deterrence. This Court, and the prosecutions for January 6th cases, rightfully need to send a message that political violence is not acceptable. However, it is also important to send a message recognizing and incentivizing mitigating behavior in cases like this. Should the Court place trust in Ben and sentence him to probation or no active jail time, the message that would be sent is that the Court is willing to give credit to him and others who immediately cooperate with investigators, follow all pretrial directives, and express genuine remorse. If a sentence of probation is given, it will not be a disparity. It would be consistent with cases such as *United States v. Rachel Pert*, 1:21-CR-00139-TNM, (received twenty-four months of probation and no active incarceration for a violation of 18 U.S.C. § 1752(a)(1)), *United States v. Jeffrey Witcher*, 1:21-CR-00235-RC (received twelve months of probation and no active incarceration for a violation of 18 U.S.C. § 1752(a)(1)), and *United States v. Kevin Cordon* (1:21-CR-00277-TNM) (received twelve months of probation and no active incarceration for a violation of 18 U.S.C. § 1752(a)(1)).

In the broader terms of general deterrence, in recent years, justice reforms, such as those in the states of Texas, New York, and Kentucky have led to those states reducing their legal system's former reliance on incarceration as the key to addressing crime. By using alternative sentences and lesser terms of incarceration when the defendant does not have a prior record, was

6

not violent, and is assessed to have little likelihood of a repeat offense, they have seen society wide benefits by lowering their crime rate, their repeat offender rate, and their prison population. Reforms are now following in many other states, and in the Federal system with the First Step Act and other initiatives to create alternatives to mass incarceration.  This country has the largest prison population in the world.  We have 25% of the whole world's prisoners but only 5% of the world's population.  Incarceration, even on our massive scale, has not solved our society's problems with crime.  In a case such as this, where the offense is nonviolent and the Defendant is capable of responding affirmatively to probation, probation is appropriate and is to be preferred, especially given how Ben can still contribute to his family and society.

### III.     THE DEFENDANT BEFORE THIS COURT.

Ben is now 28 years old.  He only has one prior contact with law enforcement involving possession of alcohol as a minor.  He is a young man with a close relationship with his mother and step-father.  He has no children and is not married.  He has earned a bachelor's degree and is employed by his parent's company as residential sales consultant.  Ben has no medical conditions which requirement ongoing treatment.  He is unlikely to have any substance abuse disorders based on the assessments performed to date.  While he does not have a current mental health diagnosis but believes he has unresolved depression and that he could benefit from mental health treatment.

Ben is ashamed about his participation in the Capitol Riot and realizes that what he did was derived from not thinking about his actions and driven by immaturity.  He was not destructive or violent during the events of January 6th, but still realizes that he should not have been in the building.  His letter reflects his understanding about how his actions contributed to the problems faced by law enforcement that day, even if Ben was not acting aggressively towards them himself.

Ben has shown through his actions that he is remorseful.  Ben met with the FBI without an attorney and cooperated fully and immediately.  As he learned about what had happened on January 6th, he grew up, realized what he did was wrong, and has shown he can take steps to educate himself and try to be a better person and citizen.  Ben is responsible for his own decisions. His letter shows that he has reflected on his actions, and the PSIR also shows the steps he has taken to move forward with his life by pursuing education and working towards a real estate license.  A sentence without active incarceration will satisfy the goals of sentencing.  It also will send an important message to those who now face charges or might in the future: taking responsibility, reflecting on wrongdoing, and learning and growing from the experience is what our society expects and respects from its citizens.

This Court is asked to show mercy and justice and place this man on a path towards success.

Respectfully Submitted,

_____/s/ *Bret Lee*_____

Bret D. Lee, (D.C. Bar 1027261)
10521 Judicial Drive Suite 100
Fairfax, Virginia 22030
Phone: (703) 936 0580
Fax:    (800) 783-4389
Email: bret@bretlee.com
*Counsel for Defendant*